FILED

2009 Sep-28  PM 03:11
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| WILLIE WHITSON, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 3:08-CV-1240-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The plaintiff, Willie M. Whitson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  Ms. Whitson timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Whitson was forty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has no more than a seventh grade education.  (Doc. 7 at 2, Tr. at 104.)  Her past work experience includes employment as a restaurant cook, dishwasher, and house keeper.  (Doc. 7 at 2, Tr. at 90, 99, 107-18, 124-28.)  Ms. Whitson claims that she became disabled on October 3, 2003, due to back problems, diabetes, and ankle problems.  (Doc. 7 at 1.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   These impairments must be severe and must meet the durational requirements

before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. (*Id.*) If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*. If the claimant cannot do past relevant work, then the

analysis proceeds to the fifth step.  *Id*.  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id*.

Applying the sequential evaluation process, the ALJ found that Ms. Whitson "meets the insured status requirements of the Social Security Act through June 30, 2008."  (Tr. at 19.)  He further determined that Ms. Whitson has not engaged in substantial gainful activity since the alleged onset of her disability.  *Id*.  According to the ALJ, Plaintiff has the "following severe impairments: degenerative disk disease, obesity, depressive disorder, diabetes mellitus, and anxiety disorder."  *Id*. at 20.  However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  *Id*. at 21.  The ALJ determined that Ms. Whitson has the residual functional capacity to "perform light work with no more than moderate mental limitations and a

verbal IQ score of 80, a performance IQ of 84, and full scale IQ estimate of 80." *Id*.

The ALJ then determined Plaintiff is not capable of performing past relevant work (Tr. at 23.)  However, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there are a number of jobs in the national economy the Plaintiff can perform.  *Id*. at 24.  Based on the testimony of a vocational expert ("VE"), these jobs include work as an assembler (1,400 jobs regionally; 130,000 nationally), production inspector (1,300 jobs regionally; 120,000 nationally), and hand packager (1,350 jobs regionally; 125,000 nationally).  *Id*. at 24, 676.  Accordingly, the ALJ entered a finding that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from October 3, 2003 through the date of this decision." *Id*.

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support

the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id*. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Whitson v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that

the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Ms. Whitson alleges that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for three reasons. (Doc. 7.) First, Plaintiff claims "the ALJ mischaracterized Mrs. Whitson's testimony in several key respects, such that his credibility finding cannot be based on substantial evidence." *Id*. at 9-12. Second, Plaintiff contends "the ALJ's finding that Mrs. Whitson can perform the exertional demands of light work is not supported by the opinions of any physicians of record, and, as such, cannot be based on substantial evidence." *Id*. at 12-16. Lastly, Plaintiff claims "the ALJ failed to sustain his burden of establishing that there is other work in the national economy that Mrs. Whitson can perform." *Id*. at 16-21.

A.     Credibility Determination.

1.     Bias of ALJ.

Plaintiff first contends that, in mischaracterizing her testimony, the ALJ demonstrated bias.  (Doc. 7 at 9-12.)  ALJs are presumed to be unbiased and exercise their decision-making authority with honesty and integrity. *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).   These presumptions can only be overcome by demonstration of either a conflict of interest of the ALJ or another specific reason for disqualification.  *McClure* 456 U.S. at 195.  Plaintiff must show the ALJ either derived his opinion from an extrajudicial source or engaged in conduct that "reveal[s] such a high degree of favoritism or antagonism as to make fair judgment impossible."  *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).

In making her claim of bias, Plaintiff cites the ALJ's finding that Plaintiff's case is a "case about choice and not disability," which the ALJ based on Plaintiff's statement "that if she went back to work she would have no one to care for her new baby, born December 1, 2005," and the fact

that disability benefits were drawn by Plaintiff's husband and son.  (Doc. 7 at 10.)  Plaintiff contends that, in the following statement, the ALJ further "mischaracterized Ms. Whitson's testimony in an effort to make it appear that she was staying home by choice, and not due to her disability" (Doc. 7 at 10):

> [the ALJ] has considered that life-style choices are involved in this case . . . .  The claimant's baby was born on December 1, 2005, and the primary reason that she is not working now is that she needs to take care of the baby and that is what she is supposed to be doing.  She testified that her husband is on disability and receives $818 per month and the baby now gets about $200 per month on his earning record.  She did not appear convinced that he could take care of the baby if she went to work.  She has to pick up the baby, feed the baby, and she does all of these things in spite of back pain.  The baby requires a lot of attention.  The undersigned is not convinced that she is totally disabled and unable to work.

(Doc. 7 at 10, Tr. at 24-25.)

It appears to this Court that the ALJ was attempting to discredit Plaintiff in that, because her husband was disabled, he would not be able to care for the baby by himself, and therefore Plaintiff wanted to stay at home to care for the baby.  Plaintiff cites to *Burroughs v. Massanari*, in which the court found bias on the part of the ALJ when the ALJ found the

claimant's "motives" to be questionable because her daughter and grandson also receive benefits.  156 F.Supp.2d 1350, 1366 (N.D. Ga. 2001).  However, that case was one which dealt only with disability benefits.  *Id.* at 1353.  The present case concerns both disability benefits and SSI.  (Tr. at 17.)  To receive SSI, a Plaintiff will be asked for "information about your income and resources and about other eligibility requirements and you must answer completely."  20 C.F.R. § 416.203(a).  Plaintiff stated to the ALJ that her "husband's income knocked [her] Medicaid out."  (Tr. at 665).  Therefore, it was appropriate for the ALJ to question Plaintiff about her resources and to note Plaintiff's responses within his decision.

> 2.     Subjective Complaints of Pain.

Plaintiff next contends that "the transcript of the hearing does not support the ALJ's findings."  (Doc. 7 at 10.)  Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence.  *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that

confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ is permitted to discredit Claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.").  Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'"  *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562).  In *Dyer*, the Eleventh Circuit held that the ALJ properly applied the *Holt* standard when he considered the claimant's daily activities, frequency of his symptoms, and the types and dosages of his medications, to conclude that the claimant's subjective complaints were

inconsistent with the medical record.  *Id*. at 1212.  "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole."  *Id*. (internal quotations omitted).

In this case, the ALJ found that Plaintiff met the first prong of the Eleventh Circuit's pain  standard, but he did not believe that the objective, medical evidence confirms the severity of the alleged pain arising from that condition or that any impairment of such severity could reasonably be expected to give rise to the disabling pain and other limitations alleged by Plaintiff.  (Tr. at 22.)

Plaintiff claims that, in finding Plaintiff "did not appear convinced that [her husband] could take care of the baby if she went to work," and "the primary reasons that she is not working now is that she needs to take care of the baby," the ALJ was merely speculating and speculation cannot form the basis of a credibility finding.  (Doc. 7 at 11, Tr. at 24-25.)  However, the ALJ's finding was not based on mere speculation.  When the ALJ questioned Plaintiff about who would take care of her baby if she went back to work,

Plaintiff stated "nobody."  (Tr. at 662.)  Plaintiff testified that she could lift, carry, and take her baby, who weighed sixteen pounds, out of a stroller. *Id*. at 22.  She also testified to "taking care of personal hygiene and caring for the baby, washing clothes, cooking the meals, washing dishes, cleaning the house, and paying the bills." *Id*.  The ALJ found all of these activities to be inconsistent with disabling pain.

Although Plaintiff did state that she was not able to work, she claimed that she could not work because Dr. Gillis told her she should get on disability.  (Tr. at 23.)  However, there is nothing in Dr. Gillis' records to indicate that he told Plaintiff to apply for disability. *Id*. at 23, 327-30, 555-83.  In fact, as noted by the ALJ, Dr. Gillis "noted on several occasions that the claimant's diabetes mellitus was well controlled and her back pain was only mild." *Id*. at 23.  In March 2004, an MRI of the lumbar spine showed only mild arthritic changes of the L5-S1 disc, but was otherwise normal. *Id*. at 20.  Additionally, Dr. D.B. Laughlin, who performed a consultative physical exam on Plaintiff in June 2004, noted the claimant had a normal gait, did not require an assistive device in order to ambulate, sitting straight leg raises were negative, Romberg was negative, no muscle atrophy was

noted, and no difficulties with manipulation.  *Id*. at 22.  Further, the ALJ noted that "there have been significant periods of time since the alleged onset date during which time the claimant has not taken any medications for those symptoms."  *Id*. at 22.

Thus, the ALJ considered several different factors in making a credibility finding, including Plaintiff's testimony, daily activities, medical records, and medications.  The ALJ's credibility finding is supported by the record.

B.    RFC to Perform Light Work.

Plaintiff next contends that the ALJ's RFC assessment of light work cannot be sustained because "the record is devoid of any medical assessments, whether examining, treating, or non-examining, which supports the ALJ's RFC assessment."  (Doc. 7 at 12-13.)  An RFC is defined as "the most you can still do despite your limitations," and the Agency will assess RFC based on "all the relevant evidence in your case record."  20 C.F.R. § 404.1545(a).  The Grid Guidelines define light "work as work which involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds."  20 C.F.R. § 404.1567(b).

Even though the weight lifted may be very little, a job is in the light category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. *Id.*

An individual's RFC is an example of an issue that is administrative in nature, not a medical issue. Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *2 (S.S.A.). The Commissioner decides administrative issues and the Commissioner's regulations put the ultimate responsibility of determining RFC with the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c); SSR 9605p, 1996 WL 374183 at *5. His decision must be based not only upon the medical evidence, but upon all evidence in the record. *Id.* Further, while medical opinions are to be weighed by the ALJ, an RFC finding will not be invalidated due to the absence or discrediting of a medical opinion. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments. *See Bowen v.*

*Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d. at 1278;

42 U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under

a disability unless he furnishes such medical and other evidence of the

existence thereof as the Commissioner of Social Security may require").

The regulations also establish that the claimant's burden is to provide the

relevant medical and other evidence she believes will prove her alleged

disability.  *See* 20 C.F.R. § 404.1512(a) and (c).  Moreover, the claimant's

burden is to provide a medical record that is complete, and if he or she fails

to do so, the ALJ will make a decision based on the evidence of record.  *See*

20 C.F.R. §§ 404.1513(e), 404.1516.

Plaintiff claims that the ALJ relied on the opinion of the state agency

non-examining "physician."  (Doc. 7 at 12.)  However, it should first be

noted that while the state agency physician determined Plaintiff was

capable of medium work, the ALJ found Plaintiff could only perform light

work.  (Tr. at 21.)  Thus, the ALJ found Plaintiff capable of a lesser RFC than

the state agency physician's determination.  The ALJ also found that, even

though the state agency physician was non-examining, the opinion is still

entitled to some weight given the number of other reasons the ALJ found to reach similar conclusions.  *Id.* at 23.

In determining Plaintiff's RFC, the ALJ did not rely solely on the state agency physician.   As previously discussed, the ALJ noted Plaintiff's testimony as to her daily activities, the fact that there were times Plaintiff was not on any medication for pain, the medical records of Dr. Gillis and Dr. Laughlin, and the fact that Plaintiff could lift and carry her sixteen pound baby[1], in determining Plaintiff was capable of performing light work.  (Tr. at 22-23.)

Plaintiff's final contention with respect to RFC is that "[s]ince RFC is a medical assessment, an ALJ is precluded from making this assessment without some expert medical testimony or other medical evidence to support his decision."  (Doc. 7 at 13.)  As already noted, an individual's RFC is an example of an issue that is administrative in nature, not a medical issue.  Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *2 (S.S.A.).  While medical opinions are to be weighed by the ALJ, an RFC finding will not be invalidated due to the absence or discrediting of a medical opinion.  *Moore v. Barnhart*,

---

[1]*See supra* pp. 12-13.

405 F.3d 1208, 1212 (11th Cir. 2005).  The regulations state that a medical

report should include:

> a statement about what you can still do despite your
> impairment(s) based on the acceptable medical
> source's findings on the factors under paragraphs
> (b)(1) through (b)(5) of this section . . . .  Although
> we will request a medical source statement about
> what you can still do despite your impairment(s), the
> lack of the medical source statement will not make
> the report incomplete.

20  C.F.R.  §§  404.1513(b)(6),  416.913(b)(6);  *see  also*  20  C.F.R.  §§

404.1519n(c)(6), 416.919n(c)(6) (medical source statement is not required

in  a  consultative  report  and  a  lack  thereof  does  not  make  the  record

incomplete).  Therefore, contrary to Plaintiff's claim, the ALJ properly

assessed Plaintiff's RFC.

C.     Plaintiff's  Ability  to  Perform  Other  Work  in  the  National
         Economy.

         1.     Hypothetical Question Posed to the VE.

Plaintiff  claims  the  ALJ  failed  to  pose  a  complete  hypothetical

question  to  the  VE  because  the  hypothetical  question  "did  not

comprehensively  describe  [Plaintiff's]  limitations,"  nor  did  it  include

Plaintiff's subjective complaints.  (Doc. 7 at 17.)  The ALJ must pose a hypothetical question which includes all of the plaintiff's impairments in order for the vocational expert's response to constitute substantial evidence. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).  However, the ALJ is not required to include limitations in the hypothetical that were properly rejected as unsupported.  *Allen v. Barnhart*, 174 Fed. App'x 497, 499 (11th Cir. 2006); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Based on the medical evidence of record, the ALJ discounted Plaintiff's subjective complaints of pain.[2]  Therefore, the ALJ did not have to include those complaints of pain within the hypothetical question to the VE.

2.    Social Security Ruling 00-4p.

Plaintiff's final claim is that the "ALJ failed to comply with SSR 00-4p in failing to ask the VE if his testimony was consistent with the DOT and Mrs. Whitson was prejudiced by this error."  (Doc. 7 at 17.)  Social Security Ruling 00-4p states that "[a]t the hearings level, as part of the adjudicator's

---

[2]*See supra* pp. 12-14.

duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency [between the evidence offered by the VE and the information in the DOT].”  2000 WL 1898704, at *2.  If a conflict is identified, the ALJ must resolve the conflict.  *Id.*

In the present case, although the ALJ stated that “[p]ursuant to SSR 00-4p, the vocational expert’s testimony is consistent with the information contained in the Dictionary of Occupational Titles,” the ALJ did not explicitly ask the VE whether his testimony was consistent with the DOT. (Tr. at 674-78.)   However, the ALJ did elicit testimony from the VE concerning jobs existing in the national economy that Plaintiff could perform.  *Id*. at 24.

> In the hypothetical posed to the VE, the ALJ asked the VE to assume
>
> individual that is 40 years of age, has a 7th grade education, in special education, her reading level is, is probably fairly low, Mr. Elliot said 2nd grade level for spelling and reading. . . .  assume that as far as a residual functional capacity the claimant can pick up five pounds, with either hand.  I’m going to say that she can occasionally lift 20 pounds, she can pick up her baby who weighs 16.  She can sit at one time for 20 to 30 minutes.  Stand at one time for 30 minutes and walk for about a block.  At the very last hearing all of her prior jobs were classified as medium or heavy work and I’m going to find that she cannot perform medium exertional work.

(Tr. at 675.)   Based on those limitations, the VE found "light, unskilled employment opportunities" exist for Plaintiff.  *Id*. at 26.  Examples of these jobs include assembler, production inspector, and hand packager.  *Id*.  The DOT defines light work as "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force constantly."  Doc. 7-10 at 5.  While Plaintiff claims this definition conflicts with the VE's finding that Plaintiff could perform work as an assembler (Doc. 7 at 18), that is not the case.  The VE's testimony was based on the assumption Plaintiff could lift five pounds with either hand and occasionally lift twenty pounds, which fits the definition of light work.

Plaintiff further claims "the VE's testimony that an individual who must have a sit stand option, and sit at one time for 20 to 30 minutes and stand at one time for 20 minutes, can, in fact, perform any of these light jobs conflicts with the DOT."  Doc. 7 at 18.  However, in describing an assembler job, the DOT states:

> [e]ven though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling

of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

Doc. 10-2 at 19-20.  A sit/stand option does not appear to conflict with part 2 or part 3.

Plaintiff's final argument with regard to the DOT is that "the VE's testimony that an individual who has a 'fairly low' reading ability and who has a moderate limitation in the ability to perform detailed instructions, could perform any of the three jobs is not consistent with the DOT."  (Doc. 7 at 19.)  For example, all three jobs have a reasoning level of "2," which entails Plaintiff being able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations." DICOT 706-684-022, 1991 WL 679050 (G.P.O.), DICOT 753.687-038, 1991 WL 680354 (G.P.O.), DICOT 723.687-014, 1991 WL 679525 (G.P.O.).  While the assembler job and the hand packager job both require a language level of "1 - Reading," meaning the ability to "[r]ecognize meaning of 2,500 two- or three-syllable words.  Read at rate of 95-120 words per minute.  Compare

similarities and differences between words and between series of numbers"
(DICOT 706-684-022, 1991 WL 679050 (G.P.O.), DICOT 753.687-038, 1991 WL
680354 (G.P.O.)), the job of inspector requires a language level of "2 -
Reading," meaning "Passive vocabulary of 5,000 - 6,000 words.  Read at rate
of 190 -215 words per minute.  Read adventure stories and comic books,
looking up unfamiliar words in dictionary for meaning, spelling, and
pronunciation.  Read instructions for assembling model cars and airplanes."
DICOT 723.687-014, 1991 WL 679525 (G.P.O.).

It appears to the Court that the VE's testimony concerning Plaintiff's
"fairly low" reading ability and moderate limitation in the ability to perform
detailed instructions is not consistent with the DOT.  Although the ALJ relied
on the VE, he did not properly identify and resolve the conflict as required
by SSR 00-4p.  Therefore, this Court remands this case to the ALJ to make
a proper determination as to the conflict between the VE's testimony and
the DOT.

IV.     Conclusion.

Upon review of the administrative record, and considering all of Ms. Whitson's arguments, the Court finds that the ALJ's decision concerning Plaintiff's ability to perform other work in the national economy is not supported by substantial evidence.  For the foregoing reasons, the ALJ's denial of benefits is **vacated**, and the case is **remanded** to the ALJ for further proceedings consistent with this opinion.  A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this <u>28th</u> day of <u>September 2009</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671